## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA,

     *Plaintiff*,

v.

CHÉ ALEXANDER, Clerk of Courts
for Fulton County,

     *Defendant*.

Case No. 1:25-CV-07084-TWT

**MEMORANDUM IN SUPPORT OF BLACK VOTERS MATTER FUND, CWA LOCAL 3204, AND CWA LOCAL 3204 RETIRED MEMBERS COUNCIL'S MOTION TO INTERVENE AS DEFENDANTS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

    I.   DOJ seeks ballots from the 2020 election in Fulton County to further election-denying conspiracy theories. .............................................................3

    II.  No valid legal basis supports DOJ's demand. .................................................5

    III. Proposed Intervenors' interests are placed in jeopardy by DOJ's demand.....7

LEGAL STANDARD.............................................................................................11

ARGUMENT .......................................................................................................12

    I.   Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2). ........................................................................................................12

      A. The motion is timely. ................................................................................12

      B. Proposed Intervenors have interests in protecting the privacy and voting rights of their members and constituents and safeguarding their organizational missions.............................................................................13

      C. The existing parties do not adequately represent Proposed Intervenors. ...16

    II.  Alternatively, Proposed Intervenors should be granted permissive intervention. ..............................................................................................19

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                     **Page(s)**

*1789 Found. Inc. v. Fontes*,
 No. CV-24-02987-PHX-SPL, 2025 WL 834919 (D. Ariz. Mar. 17,
 2025) ......................................................................................................... 20

*Allstate Ins. Co. v. Ginsberg*,
 351 F.3d 473 (11th Cir. 2003) ........................................................................ 13

*Berger v. N.C. State Conf. of the NAACP*,
 597 U.S. 179 (2022) ......................................................................................... 17

*Butler v. City of Douglas*,
 No. 5:14-cv-55, 2016 WL 5661203 (S.D. Ga. Sept. 29, 2016) ..................... 14

*Chiles v. Thornburgh*,
 865 F.2d 1197 (11th Cir. 1989) ............................................................ 12, 18

*Clark v. Putnam County.*,
 168 F.3d 458 (11th Cir. 1999) ........................................................................ 18

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
 172 F.3d 104 (1st Cir. 1999) ........................................................................... 20

*In re Exch. Union Co.*,
 No. 24-MC-91645-ADB, 2025 WL 894652 (D. Mass. Mar. 24,
 2025) ......................................................................................................... 19

*First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*,
 No. 1:11-cv-2087-ODE, 2011 WL 13221046 (N.D. Ga. Nov. 1,
 2011) ......................................................................................................... 12

*Foster v. Love*,
 522 U.S. 67 (1997) ............................................................................................. 7

*Franconia Mins. (US) LLC v. United States*,
 319 F.R.D. 261 (D. Minn. 2017) .................................................................... 20

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003)........................................................................17

*Georgia v. U.S. Army Corps of Eng'rs*,
    302 F.3d 1242 (11th Cir. 2002) ............................................................ 12, 16

*Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*,
    142 F.4th 757 (D.C. Cir. 2025).....................................................................17

*Issa v. Newsom*,
    No. 2:20-cv-0104, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ...............15

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 1:24-cv-01867, 2024 WL 3454706 (N.D. Ill. July 18, 2024)................15

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) .........................................................................17

*League of Women Voters of N.C. v. North Carolina*,
    No. 1:13-cv-660, 2014 WL 12770081 (M.D.N.C. Jan. 27, 2014) ...............20

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020)......................................................................................17

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*,
    425 F.3d 1308 (11th Cir. 2005) ............................................................ 14, 19

*Paher v. Cegavske*,
    No. 3:20-cv-0024, 2020 WL 2042365 (D. Nev. Apr. 28, 2020)..................15

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) .......................................................20

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
    874 F.3d 692 (11th Cir. 2017) ....................................................... 11, 13, 16

*Thomas v. Henderson*,
    297 F. Supp. 2d 1311 (S.D. Ala. 2003) ........................................................12

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)................................................................. 16, 17

Opinion, *United States v. Benson*,
    No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025) ...........................14

*United States v. Oregon*,
    No. 6:25-CV-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5,
    2025) ......................................................................... 14, 15, 18

*Venetian Casino Resort, LLC v. Enwave L.V., LLC*,
    No. 2:19-cv-119-JCM-DJA, 2020 WL 1539691 (D. Nev. Jan. 7,
    2020) ......................................................................................16

## US CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1 ..........................................................7

## FEDERAL STATUTES

52 U.S.C. § 20507 .......................................................................6

52 U.S.C. § 20701 ....................................................................5–6

52 U.S.C. § 20703 .......................................................................6

52 U.S.C. § 21083 .......................................................................6

## STATE STATUTES

O.C.G.A. § 21-2-390...................................................................5

O.C.G.A. § 21-2-500................................................................5, 13

O.C.G.A. § 50-18-72................................................................5, 13

## OTHER AUTHORITIES

David Wickert, *Donald Trump hired him to find voting fraud. He debunked it instead*, Atlanta J.-Const. (Oct. 30, 2024), https://perma.cc/WCX2-BE8H ........................................................................3

Fed. R. Civ. P. 24 ............................................................................ 2, 12, 19

Holly Bailer & Amy Gardner, *Trump charged in Georgia 2020 election probe, his fourth indictment*, Wash. Post (Aug. 15, 2023), https://perma.cc/A6RX-KES3 ........................................................3

Mark Niesse & David Wickert, *Conspiracy vs. reality: 2020 election fraud claims persist, but most are debunked*, Atlanta J.-Const. (Oct. 30, 2024), https://perma.cc/EPY7-29VX ..............................3

*Official Results: November 3, 2020 General Election*, Ga. Sec'y of State (Jan 2, 2025), https://perma.cc/4WWW-9KPN..............................3

Ross Williams, *Fulton County election interference case against Trump and his allies is dismissed*, Ga. Recorder (Nov. 26, 2025), https://georgiarecorder.com/2025/11/26/fulton-county-election-interference-case-against-trump-and-his-allies-is-dismissed/ ........................3

*State Election Board Clears Fulton County "Ballot Suitcase" Investigation; Report Finds No Evidence of Conspiracy, No Fraud*, Ga. Sec'y of State (June 20, 2023), https://sos.ga.gov/news/state-election-board-clears-fulton-county-ballot-suitcase-investigation-report-finds-no ....................................................................................4

## INTRODUCTION

The United States Department of Justice ("DOJ") has been enlisted in a campaign to fan the flames of conspiracy and sow doubt about the legitimacy of the 2020 election. In its most recent salvo, DOJ sued the Fulton County Clerk of Courts, demanding access to ballots and related records from the 2020 general election. Those ballot materials are kept under seal by Georgia law, and no federal law justifies DOJ's far-reaching demand.

Proposed Intervenors comprise a Georgia civic organization and two Georgia union groups. Their members and constituents include Georgians who voted in the Fulton County 2020 general election; those voters will have the sanctity of their ballots and privacy rights violated if DOJ wins the relief it seeks. Proposed Intervenors' organizational missions are also at stake in this litigation. All three groups are dedicated to mobilizing voters in their respective communities—including Fulton County in particular—and those efforts will be undermined if Georgians are deterred from voting on account of a vengeful federal government having the opportunity to rummage through their ballots years after an election. Accordingly, Proposed Intervenors move to intervene in this litigation to defend their interests and the interests of their members and constituents against DOJ's overreach.

Proposed Intervenors readily satisfy the standard for intervention as of right. *See* Fed. R. Civ. P. 24(a)(2). They have a clear interest in defending the rights of their members, as well as in safeguarding their own voter-engagement missions. Those interests would be severely impaired if DOJ wins the relief it seeks. The existing Defendant—the Fulton County Clerk of Courts—is the current custodian of the ballot materials but does not adequately represent Proposed Intervenors' interests in ensuring that the materials are not handed over to DOJ.

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b) to ensure that Fulton County voters have a voice in this case, which ultimately concerns their ballots. At a minimum, Proposed Intervenors will help to develop the issues in this case and to ensure vigorous presentation of arguments that the existing official-capacity Defendant may be limited in presenting. Those considerations weigh strongly in favor of permissive intervention. And Proposed Intervenors will abide by any schedule ordered by the Court or agreed to by the existing parties—they will not delay this case.

The Court should therefore grant Proposed Intervenors' motion to intervene as defendants.

## BACKGROUND

I.    **DOJ seeks ballots from the 2020 election in Fulton County to further election-denying conspiracy theories.**

President Trump lost the 2020 general election in Georgia.[1] In Fulton County, it was a landslide: He lost by nearly 244,000 votes, garnering only 26% of votes cast. *See supra* note 1. Nonetheless, he immediately began a multi-front campaign to overturn the election results in Georgia, which culminated in the indictment of President Trump and his co-conspirators in Fulton County.[2] And through subsequent investigations by the State of Georgia and others, virtually all of the conspiracy theories about the election—many of them seeking to delegitimize Fulton County voters—were thoroughly debunked.[3]

---

[1] *Official Results: November 3, 2020 General Election*, Ga. Sec'y of State (Jan 2, 2025), https://perma.cc/4WWW-9KPN.

[2] Holly Bailer & Amy Gardner, *Trump charged in Georgia 2020 election probe, his fourth indictment*, Wash. Post (Aug. 15, 2023), https://perma.cc/A6RX-KES3; Ross Williams, *Fulton County election interference case against Trump and his allies is dismissed*, Ga. Recorder (Nov. 26, 2025), https://georgiarecorder.com/2025/11/26/fulton-county-election-interference-case-against-trump-and-his-allies-is-dismissed/ (explaining the indictment was dismissed as a result of President Trump resuming office).

[3] *E.g.*, David Wickert, *Donald Trump hired him to find voting fraud. He debunked it instead*, Atlanta J.-Const. (Oct. 30, 2024), https://perma.cc/WCX2-BE8H; Mark Niesse & David Wickert, *Conspiracy vs. reality: 2020 election fraud claims persist, but most are debunked*, Atlanta J.-Const. (Oct. 30, 2024), https://perma.cc/EPY7-29VX.

Nonetheless, on October 6 the Georgia State Election Board ("State Board") sent a subpoena to the Fulton County Board of Registration and Elections ("County Board") for certain 2020 ballot materials—even though a thorough investigation by the Georgia Secretary of State already repudiated the conspiracy theory animating the State Board's subpoena.[4] In its October 22 response, the County Board explained that the ballots materials sought were held under seal by the Fulton County Clerk of Courts, as required by Georgia law. ECF No. 2-4 at 3–4.

Soon after, DOJ joined the fray by sending an October 30 letter demanding the same records that the State Board sought in its subpoena. ECF No. 2-3. The County Board responded that DOJ had no legal basis to demand the records and reiterated that the ballot materials were held under seal by the Fulton County Clerk of Courts. ECF No. 2-4 at 1–2. Without addressing the legal defects in its demand, DOJ then sent a November 21 letter demanding the ballot materials to the Fulton County Clerk of Courts. ECF No. 2-5. According to DOJ, it received no response. Compl. ¶ 24, ECF No. 1.

---

[4] *State Election Board Clears Fulton County "Ballot Suitcase" Investigation; Report Finds No Evidence of Conspiracy, No Fraud*, Ga. Sec'y of State (June 20, 2023), https://sos.ga.gov/news/state-election-board-clears-fulton-county-ballot-suitcase-investigation-report-finds-no.

On December 11, 2025, DOJ sued the Clerk of Courts for Fulton County, Ché Alexander ("Clerk of Courts"). As relief, DOJ seeks the same materials previously sought by the Georgia State Election Board via subpoena: "all used and void ballots, stubs of all ballots, signature envelopes, and corresponding envelope digital files from the 2020 General Election in Fulton County." Compl. ¶ 17; *see also id.* at 7 (seeking order for "the records requested").

## II.    No valid legal basis supports DOJ's demand.

Georgia law dictates that the materials DOJ seeks are to be held under seal by the Clerk of Courts and cannot be disclosed absent an "order of the superior court" to unseal the records. O.C.G.A. § 21-2-500(a); *see also* O.C.G.A. 21-2-390(a). Georgia law also protects voters' personal identifying information found on the signature envelopes and corresponding digital files from disclosure. *See* O.C.G.A. § 50-18-72(a)(20)(A). DOJ's suit provides no legitimate basis for this Court to override those protections and order the 2020 Fulton County ballot materials be released to DOJ.

DOJ's sole claim is that it is entitled to the ballot materials under the Civil Rights Act of 1960. Compl. ¶¶ 25–27. That claim is meritless. Title III of the Act requires election officials to maintain "for a period of twenty-two months" records that come into their possession "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. § 20701, and,

when supported by a proper "basis" and "purpose," permits DOJ to inspect those records, *id.* § 20703.

DOJ's demand fails under Title III's plain text twice over. To start, the 2020 election occurred over 61 months ago—well outside Title III's 22-month retention period. DOJ also fails to state a sufficient basis and purpose to invoke Title III, as the statute requires. *Id.* § 20701. The best DOJ can muster is to assert it seeks the ballot materials to ascertain "Fulton County's compliance with federal election law, particularly the NVRA [National Voter Registration Act] and HAVA [Help America Vote Act]." Compl. ¶ 10. That claim cannot be taken seriously—both statutes primarily concern rules regarding voter *registration*. *See, e.g.*, 52 U.S.C. §§ 20507(a), 21083(a)(1)(A). Neither has anything to do with the *ballot* materials DOJ seeks here. DOJ makes little effort to hide its true purpose: to aid the State Board in its conspiracy-chasing project aimed at delegitimizing Fulton County voters and denying President Trump's loss in the 2020 general election in Georgia. *See* Compl. ¶¶ 15–19; Decl. of Eric Neff ¶ 2, ECF No. 2-2; Letter from Harmeet Dhillon to Fulton County Board of Registrations and Elections at 2, ECF No. 2-3; Letter from Harmeet Dhillon to Ché Alexander at 2, ECF No. 2-5.

It should come as no surprise that DOJ fails to identify any federal law supporting its demand for Fulton County's 2020 ballot materials. The U.S. Constitution "invests the *States* with responsibility for the mechanics" of elections,

subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (emphasis added); *see also* U.S. Const. art. I, § 4, cl. 1. Though Congress has enacted several laws—such as the NVRA and HAVA—governing voter registration, Congress has left the actual administration of elections to the states and, as a result, has never given DOJ carte blanche to demand access to ballots. For good reason: As Congress stressed when enacting HAVA, the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, at 32 (2001).

## III.    Proposed Intervenors' interests are placed in jeopardy by DOJ's demand.

Proposed Intervenors comprise Black Voters Matter Fund ("BVMF"), Communications Workers of America Local 3204 ("Local 3204"), and Communications Workers of America Local 3204 Retired Members Council ("CWA RMC"). They seek to intervene both to protect the voting rights and privacy rights of their members and constituents, and also to safeguard their own organizational interests in voter engagement, which will be undermined if Fulton County voters are deterred from voting based on the fear that their ballots and

personal information will fall into the hands of a vengeful federal government pursuing a political narrative.

*BVMF*. BVMF is a nonpartisan, nonprofit social welfare organization dedicated to building power in the Black community by growing their power at the ballot box. Ex. 2, Albright Decl. ¶¶ 3, 5. To support that mission, BVMF engages in voter-registration and get-out-the-vote programming—throughout Georgia and particularly in Fulton County, which is home to the largest Black population in the state—as well as development and training programs, policy advocacy, and direct expenditures. *Id.* ¶¶ 4, 7. These initiatives would be undermined if Georgia voters come to believe that the ballots they cast, and the information they provide when casting those ballots, will not remain secret and private, but will instead be subject to scrutiny by federal law enforcement for years after the fact. *Id.* ¶ 9. This chilling effect will be particularly strongly felt in the Black community in Georgia due to the long history of race-based discrimination in voting by government actors. *Id.* ¶¶ 6, 10. And the deterrent effect will also be particularly strong in Fulton County, which is central to BVMF's efforts and has already seen years of conspiracy theories seeking to undermine confidence in the 2020 election. *Id.* ¶ 11. Accordingly, if DOJ succeeds in achieving access to the Fulton County 2020 ballot materials, BVMF will have to redirect resources to mitigate the chilling effect on voting engagement and participation by working to convince reluctant and skeptical voters that voting

remains worthwhile, despite the risks stemming from conspiratorial federal scrutiny. *Id.* ¶¶ 12–14. That will necessarily come at the expense of BVMF's existing voter engagement efforts and other mission-critical programs. *Id.* ¶ 13.

*Local 3204*. Local 3204 is a chartered affiliate of the Communication Workers of America, a labor union primarily drawing from the telecommunications and media industries. Ex. 3, Barlow Decl. ¶¶ 4–5. Local 3204 has approximately 1,400 members in the metro Atlanta region, including many who live and vote in Fulton County. *Id.* ¶ 4. Its mission is to help its members live a secure and dignified life in the workplace and beyond. *Id.* ¶ 6. As part of that mission, Local 3204 works to build the political power of its members by encouraging and assisting them in registering them to vote, turning them out during elections, and advocating for policies that will improve its members' lives. *Id.* ¶ 6–9. That mission would be undermined if DOJ succeeds in accessing the Fulton County 2020 general election ballot materials it seeks. *Id.* ¶ 12. Local 3204's members expect their ballots and the information they provide when they vote—including the identifying information on signature envelopes and corresponding digital files, which DOJ seeks—to be kept secret and private under state law. *Id.* ¶¶ 11, 13. If that expectation is upset, some members—as well as other Georgia voters Local 3204 seeks to engage—will second-guess voting in future elections, frustrating Local 3204's voter-engagement efforts. *Id.* ¶¶ 13, 15. As workers in the telecommunications industry, Local 3204's members are

particularly aware of the risks of identity theft and fraud, and many members will have no faith that DOJ will keep their information from being publicly disclosed—whether on purpose, to serve a political narrative, or by accident, through negligence. *Id.* ¶ 14. Those fears may further deter some of Local 3204's members from engaging in the political process, again undermining Local 3204's mission. *Id.* ¶¶ 14–15. Further, the disclosure of Local 3204's members' secret ballot information will directly harm their privacy interests—which Local 3204 seeks to protect on its members' behalf. *Id.* ¶¶ 12, 16.

*CWA RMC*. CWA RMC, like Local 3204, is a chartered affiliate of the Communication Workers of America, which has over 2,000 members living throughout the metro Atlanta region, including many who live and vote in Fulton County. Ex. 4, Scott Decl. ¶¶ 4–5. Its mission is to ensure retirees enjoy social and economic justice and the full civil rights that they have earned after a lifetime of work. *Id.* ¶ 6. To advance that mission, CWA RMC dedicates significant resources to voter engagement and political advocacy on issues affecting its members. *Id.* ¶¶ 6–9. DOJ's efforts to unseal the 2020 Fulton County general election ballots and gain access to the private voter information contained on signature envelopes and corresponding digital files would undermine that mission. *Id.* ¶¶ 10–13. CWA RMC's members—as well as other Georgia voters it seeks to engage—will likely become more reluctant to vote in future elections if they know that their ballots and

personal information may be exposed to the federal government years later. *Id.* ¶ 14. CWA RMC's members are particularly sensitive about ensuring the privacy of their information because, as retirees and older voters, they have serious concerns about being targeted by social security fraud, identity theft, and other types of scams, and are unlikely to trust the federal government to keep their information private and secure. *Id.* ¶ 12. Those concerns would further undermine CWA RMC's voter engagement efforts if DOJ achieves the relief it seeks. *Id.* ¶¶ 12–13. Further, the disclosure of CWA RMC's members' secret ballot information will directly harm their privacy interests—which CWA RMC seeks to protect on its members' behalf. *Id*.

## LEGAL STANDARD

A movant has a right to intervene under Rule 24(a)(2) where "(1) their application to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (citation modified). Courts also have discretion to grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not "unduly

delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).[5]

"Rule 24 is to be given a liberal construction in favor of applicants for intervention." *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, No. 1:11-cv-2087-ODE, 2011 WL 13221046, at *2 (N.D. Ga. Nov. 1, 2011). Accordingly, "doubts [are to be] resolved in favor of the proposed intervenor." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003) (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe,* 164 F.3d 1080, 1081 (8th Cir. 1999)).

## ARGUMENT

I.  **Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).**

   A.  **The motion is timely.**

Proposed Intervenors' motion—filed a mere five days after DOJ sued—is timely. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (finding motion to intervene "filed only seven months after" the complaint was timely). Moreover, because no case schedule has yet been set and no substantive events have occurred in the case, there is no risk of prejudice to the existing parties. *See Georgia*

---

[5] In compliance with Rule 24(c)'s requirement that a motion to intervene be accompanied by a "pleading," Proposed Intervenors attach a proposed answer to this motion. *See* Ex. 1. Proposed Intervenors reserve the right to file a motion to dismiss under Rule 12 and an opposition to DOJ's motion to compel, ECF No. 2, by any deadline set by the Court.

*v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259–60 (11th Cir. 2002) (finding moving to intervene after six months was not untimely when intervention "did not delay the proceedings and the court had yet to take significant action."). Proposed Intervenors further agree to abide by any schedule set by the Court or the existing parties. The first element of intervention of right is thus met.

B. **Proposed Intervenors have interests in protecting the privacy and voting rights of their members and constituents and safeguarding their organizational missions.**

Proposed Intervenors also satisfy Rule 24(a)(2)'s interest factors because each has interests at stake in this matter that "as a practical matter, may [be] . . . impair[ed]" by this litigation. *Tech. Training Assocs.*, 874 F.3d at 696 (citation omitted).

Proposed Intervenors have two primary interests at stake. First, Proposed Intervenors' members and constituents—which include Georgians who voted in the 2020 general election in Fulton County—have the sanctity of their ballots and the privacy of their personal information at stake. *See supra* Background § III. The relief DOJ seeks would require overriding state law, both by disclosing ballots that Georgia law dictates should be kept under seal absent an order by Fulton County superior court, O.C.G.A. § 21-2-500(a), and also by revealing private voter information on the ballot materials that Georgia law protects from disclosure, O.C.G.A. § 50-18-72(a)(20)(A); *see also Allstate Ins. Co. v. Ginsberg*, 351 F.3d 473,

13

478 (11th Cir. 2003) (recognizing "invasion of privacy" as a "distinct and actionable tort"); *Butler v. City of Douglas*, No. 5:14-cv-55, 2016 WL 5661203, at *16 (S.D. Ga. Sept. 29, 2016) ("The invasion of one's right to privacy is actionable in tort under Georgia common law."). These interests alone are sufficient for intervention because each "derives from a legal right." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). Multiple courts have recently recognized that voters have a "significantly protectable interest[]" in the privacy of their personal information and have thus granted intervention to organizations seeking to defend those voters. *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2025 WL 3496571, at *1 (D. Or. Dec. 5, 2025) (granting intervention of right to civic organization and voters to defend against DOJ's suit for voter data); *see also* Opinion, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), ECF No. 45 (similar). This Court should do the same.

Second, Proposed Intervenors' organizational missions to engage and mobilize voters in their respective communities is also at stake. If DOJ succeeds in accessing the 2020 Fulton County ballot materials, those missions will necessarily be undermined because voters will be deterred from voting in future elections if they know that DOJ may rummage through their ballots and associated materials for years to come in search of information to support a conspiratorial political narrative. *See supra* Background § III. The chilling effect will be particularly strongly felt among

14

the discrete communities Proposed Intervenors represent—Black voters (in the case of BVMF), telecommunication workers (in the case of Local 3204 and CWA RMC), and retirees (in the case of CWA RMC)—each of whom has distinct concerns about the exposure of their ballots and personal information to a vengeful DOJ. *See supra* Background § III. Accordingly, Proposed Intervenors' efforts to mobilize voters in support of their missions will be frustrated if DOJ wins the relief it seeks in this litigation.

These interests support intervention. Courts have long held that organizations have a recognized interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to engaging voters. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-01867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). Indeed, a federal court recently granted intervention to an organization to defend against DOJ's suit for sensitive voter information because "the threat of disclosure will deter qualified voters in marginalized communities from registering to vote . . . and engaging in the political process more broadly," undermining that organization's mission. *Oregon*, 2025 WL 3496571, at *1. The same reasoning applies here.

For similar reasons, these interests, "as a practical matter, may [be] . . . impair[ed]" by this litigation. *Tech. Training Assocs.*, 874 F.3d at 696 (citation omitted). "Once an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an applicant's ability to protect that interest." *Venetian Casino Resort, LLC v. Enwave L.V., LLC*, No. 2:19-cv-1197-JCM-DJA, 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)); *see also U.S. Army Corps of Eng'rs*, 302 F.3d at 1253 (similar). If DOJ prevails in this action and accesses the ballot materials it seeks, its success will necessarily impair the privacy interests of Proposed Intervenors' members and constituents. And the declarations submitted by the Proposed Intervenors are more than sufficient to show that their organizational missions will be, too.

**C.    The existing parties do not adequately represent Proposed Intervenors.**

The existing parties do not adequately represent the interests of Proposed Intervenors. The "burden of making that showing should be treated as minimal" and the movant need only show that the existing parties' representation "*may be*" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also U.S. Army Corps of Eng'rs*, 302 F.3d at 1255 (similar). Courts are "liberal in finding" that this requirement has been satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the

representation of the applicant's own interests." 7C Wright & Miller's Federal Practice & Procedure § 1909 (3d ed. 2024).

DOJ plainly does not represent Proposed Intervenors' interests. It is diametrically opposed to those interests, as it seeks to forcibly compel production of ballots cast by Proposed Intervenors' members and constituents, in violation their privacy rights under state law, which would inevitably undermine Proposed Intervenors' voter-engagement missions.

The Clerk of Courts also does not adequately represent Proposed Intervenors. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).[6] That is because the interests of government officials are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). As a result, as the Supreme Court has emphasized, public officials must "bear in mind broader public-policy implications," whereas private litigants seek to vindicate their own rights "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022) (citing *Trbovich*, 404 U.S. at 538–39).

---

[6] *Abrogated in part on other grounds by Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *see Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n,* 142 F.4th 757, 764 n.3 (D.C. Cir. 2025).

That is precisely the case here. Proposed Intervenors have distinct and "specific interests in protecting their privacy" and "in increasing voter participation by marginalized communities" that the Clerk of Courts "do[es] not share." *Oregon*, 2025 WL 3496571, at *2 (finding inadequate representation). The Clerk of Courts, as the mere custodian of the ballot materials, has no statutory duty to defend against DOJ's suit at all, and thus "may decide not to emphasize" Proposed Intervenors' interests. *Chiles*, 865 F.2d at 1214. The Clerk of Courts will also inevitably face enormous pressure to cave into DOJ's demands, "compromising the proposed intervenors'" interests. *Clark v. Putnam County.*, 168 F.3d 458, 462 (11th Cir. 1999) (reversing denial of intervention, reasoning that though elected officials were currently defending the action, "[a] greater willingness to compromise can impede a party from adequately representing the interests of a nonparty."); *see also Oregon*, 2025 WL 3496571, at *2 (finding government defendants "have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make."). Unencumbered by such pressures, Proposed Intervenors will defend their interests "with greater zeal" than the Clerk of Courts ever could. *Clark*, 168 F.3d at 462. Accordingly, Proposed Intervenors have shown that the Clerk of Courts does not adequately represent their interests.

## II.    Alternatively, Proposed Intervenors should be granted permissive intervention.

The Court should alternatively exercise its discretion to grant permissive intervention. Permissive intervention "is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co.*, 425 F.3d at 1312 (citation omitted). Those standards are readily satisfied here. Proposed Intervenors assert a "claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), as they seek to intervene to argue that DOJ is not entitled to relief on its claim, *see generally* Ex. 1 (Proposed Answer). Further, granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b)(3). Again, Proposed Intervenors have moved with haste to intervene in this action just five days after the suit was filed, and they agree to abide by any schedule entered by the Court or agreed to by the existing parties.

The nature of Proposed Intervenors' interests here also bolsters their case for intervention. The fact that Proposed Intervenors seek to intervene to defend the "confidentiality and/or privacy interest[s]" of their members and constituents "warrants an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). In addition, courts also regularly allow pro-voting civic organizations to

intervene to ensure their voters' voices are heard when litigation implicates voting rights. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene). Proposed Intervenors' unique perspectives will be thus "helpful in fully developing the case." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999); *see also Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017) (observing that "the Court expects to profit from a diversity of viewpoints as they illuminate the ultimate questions posed by the parties" in granting permissive intervention). These considerations, in addition to the satisfaction of Rule 24(b), strongly weigh in favor of permissive intervention.

## CONCLUSION

For all of the foregoing reasons, Proposed Intervenors respectfully request that the Court grant them intervention as of right—or in the alternative grant permissive intervention—to allow them to defend the interests they have at stake in this case.

Dated: December 16, 2025

*/s/ Adam M. Sparks*
Adam M. Sparks
Ga. Bar. No. 341578
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
Suite 3500, One Atlantic Center
Atlanta, GA 30309
Tel: (404) 888-9700
Fax: (404) 888-9577
Email: sparks@khlawfirm.com

Uzoma N. Nkwonta*
Branden D. Lewiston*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
unkwonta@elias.law
blewiston@elias.law
mmcqueen@elias.law
Tel: (202) 968-4652

*Counsel for Black Voters Matter Fund,*
*CWA Local 3204, and*
*CWA Local 3204 Retired Members Council*

*Pro Hac Vice applications forthcoming

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa. This document was prepared on a computer using Times New Roman font (14 point).

This 16th day of December, 2025.

*/s/ Adam M. Sparks*
Adam M. Sparks
