# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,

     *Plaintiff*,

v.

CHÉ ALEXANDER, Clerk of Courts
for Fulton County,

     *Defendant*.

Case No. 1:25-CV-07084-TWT

**BLACK VOTERS MATTER FUND, CWA LOCAL 3204, AND CWA
LOCAL 3204 RETIRED MEMBERS COUNCIL'S PROPOSED
COMBINED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND IN OPPOSITION TO MOTION FOR ORDER TO COMPEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

INTRODUCTION ................................................................1

BACKGROUND .................................................................3

I.  The SEB's repeated investigations of the 2020 presidential election in Fulton County. ...........................................................3

II.  DOJ demands records from the 2020 election in support of SEB's repeated investigations.......................................................4

III.  DOJ attempts to invoke Title III of the Civil Rights Act to support its demand for ballot materials from the 2020 election.........................6

LEGAL STANDARD...........................................................8

ARGUMENT ...................................................................8

I.  DOJ fails to state a claim under the Civil Rights Act. ....................8

    A.  DOJ's demand for ballot materials from 2020 is untimely..................9

    B.  DOJ lacks a proper basis and purpose to demand records under Title III..............................................................10

    C.  DOJ's request for ballot materials is irrelevant to its stated purpose. ...............................................................14

    D.  DOJ fails to allege the requested records fall within Title III's scope. ...............................................................16

II.  DOJ's Motion to Compel is improper. .......................................17

    A.  The Civil Rights Act of 1960 does not displace the Federal Rules. ...18

    B.  Motions to dismiss are the proper vehicle for resolving this case or, alternatively, the next step before proceeding to discovery. .........22

CONCLUSION ................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) .......................................................... 7, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 8, 15

*Astral Health & Beauty, Inc. v. Aloette of Mid-Mississippi, Inc.*,
    895 F. Supp. 2d 1280 (N.D. Ga. 2012) .......................................................... 22

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ................................................................. 15, 20

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ............................................................. 12, 15, 20

*Home Depot U.S.A., Inc. v. Jackson*,
    587 U.S. 435 (2019) ......................................................................................... 12

*In re Admin. Subpoena No. 25-1431-019*,
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9,
    2025) ....................................................................................................... 13, 20

*In re BFW Liquidation, LLC*,
    899 F.3d 1178 (11th Cir. 2018) ...................................................................... 10

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962) .............................................................. 11

*In re Subpoena No. 25-1431-014*,
    No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ............... 13, 20

*Jones v. City of Columbus, Ga.*,
    120 F.3d 248 (11th Cir. 1997) ........................................................................ 23

*Kennedy v. Bruce*,
    298 F.2d 860 (5th Cir. 1962) .........................................................................11

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ................................................ *passim*

*Lanfear v. Home Depot, Inc.*,
    679 F.3d 1267 (11th Cir. 2012) ...................................................................22

*Paez v. Sec'y, Fla. Dep't of Corr.*,
    947 F.3d 649 (11th Cir. 2020) .......................................................................3

*PerDiemCo LLC v. NexTraq LLC*,
    720 F. Supp. 3d 1365 (N.D. Ga. 2024)........................................................8

*Presley v. United States*,
    895 F.3d 1284 (11th Cir. 2018) ...................................................................20

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ......................................................................14

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
    600 F.3d 1334 (11th Cir. 2010) ...................................................................11

*Smith v. Delta Air Lines Inc.*,
    619 F. App'x 874 (11th Cir. 2015) ..............................................................22

*Snook v. Tr. Co. of Georgia Bank of Savannah, N.A.*,
    859 F.2d 865 (11th Cir. 1988) .....................................................................23

*Thomas v. LDG Fin. Servs., Inc.*,
    463 F. Supp. 2d 1370 (N.D. Ga. 2006).......................................................16

*Trump v. Kemp*,
    511 F. Supp. 3d 1325 (N.D. Ga. 2021)........................................................3

*United States v. Fisher*,
    289 F.3d 1329 (11th Cir. 2002) ...................................................................10

*United States v. Powell*,
379 U.S. 48 (1964)........................................................................19

*United States v. Roberts*,
227 F. App'x 819 (11th Cir. 2007) ...............................................10

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014).....................................................................12

*Villarreal v. R.J. Reynolds Tobacco Co.*,
839 F.3d 958 (11th Cir. 2016) .....................................................10

*Willis v. Arp*,
165 F. Supp. 3d 1357 (N.D. Ga. 2016).........................................15

**Statutes**

26 U.S.C. § 7604(a) ............................................................................19

52 U.S.C. § 20503 ..............................................................................14

52 U.S.C. § 20507 ........................................................................ 14, 21

52 U.S.C. § 20701 ...................................................................... 6, 9, 16

52 U.S.C. § 20703 ...................................................................... 7, 9, 10

52 U.S.C. § 20705 ........................................................................ 18, 19

52 U.S.C. § 21083 ..............................................................................14

O.C.G.A. § 21-2-500............................................................................1, 5

**Federal Rules**

Fed. R. Civ. P. 1 ................................................................................17

Fed. R. Civ. P. 12(b)(6).......................................................................8

Fed. R. Civ. P. 37(a)...........................................................................22

Fed. R. Civ. P. 81(a).....................................................................................17

**Legislative Materials**

H.R. Rep. No. 86-956 (1959).................................................................. 7, 13

**Other Authorities**

Consent Order, *In the Matter of Fulton County Board of Registration and Elections*, SEB Case Nos. 2021-181, 2022-025 (June 8, 2023).....................4

Mot. to Compel Production, *United States v. Raffensperger*, No. 5:25-cv-00548-CAR (M.D. Ga. Dec. 18, 2025), ECF No. 2 .......................................6

Oral Arg. Tr., *Pearson v. Kemp*, 2020 No. 1:20-cv-4809-TCB (N.D. Ga. Dec. 7, 2020), ECF No. 79......................................................................................3

Order Denying Quashal, *Allen v. State of Georgia*, No. 24CV014632 (Fulton Cnty. Super. Ct. Dec. 19, 2025).........................................................................4

*State Election Board Clears Fulton County "Ballot Suitcase" Investigation; Report Finds No Evidence of Conspiracy, No Fraud*, Ga. Sec'y of State (June 20, 2023), https://sos.ga.gov/news/state-election-board-clears-fulton-county-ballot-suitcase-investigation-report-finds-no .........................4

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks an order from this Court granting it access to ballots and related records from the 2020 general election in Fulton County, despite a Georgia law requiring those records to be kept under seal absent an order from Fulton County Superior Court. *See* O.C.G.A. § 21-2-500(a). No federal law supports DOJ's unprecedented demand to override Georgia law and rummage through these ballots. DOJ's Complaint should be dismissed and its motion for an order to compel production denied.

The only statute DOJ invokes—Title III of the Civil Rights Act of 1960—provides no support for its demand. For one, DOJ's request falls outside Title III's strict time limit, which authorizes only the inspection of records relating to elections in the last 22 months. The 2020 general election occurred more than five years ago. That alone forecloses DOJ's claim. Second, Title III requires DOJ to provide election officials with the "basis" and "purpose" of its demand—yet DOJ offered no basis at all for its demand to the Fulton County Clerk of Courts. Third, DOJ's stated purpose—that it seeks to assess Georgia's compliance with the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA")—is both insufficient under Title III and implausible on its face, as DOJ does not even attempt to explain how ballot materials from an election that occurred more than five years ago would shed light on Georgia's compliance with those statutes. Finally, DOJ fails

to allege the subpoena responses it demands fall within Title III's scope in the first place. Each of these defects requires dismissal of its Complaint for failure to state a claim.

Despite its novel and meritless invocation of the Civil Rights Act, DOJ asks the Court to sweep aside the Federal Rules of Civil Procedure and all the opportunities those Rules provide to test the factual and legal bases of its Complaint. DOJ instead moves for "an order to compel production" of the ballot materials, effectively demanding the final relief it seeks in this action. That is not how civil litigation works. Nothing in the Federal Rules or the Civil Rights Act authorizes departing from the regular course of proceeding or permits DOJ to short-circuit the Rules for its own convenience. The Court should reject DOJ's effort to leapfrog the prescribed stages of litigation it apparently finds bothersome and instead allow the action to unfold as prescribed by the governing Federal Rules—starting by resolving the motions to dismiss, and if its claim survives the pleading stage, denying DOJ's motion to compel.[1]

---

[1] Proposed Intervenors' motion to intervene, which DOJ does not oppose, remains pending. *See* ECF Nos. 4 & 15. Proposed Intervenors submit this combined proposed motion to dismiss and opposition to DOJ's motion for an order to compel by the existing Defendants' responsive pleading deadline to preserve their rights if granted intervention.

## BACKGROUND

I.    **The SEB's repeated investigations of the 2020 presidential election in Fulton County.**

This suit is the latest front in a longstanding campaign by President Trump and his allies to undermine the results of the 2020 general election in Georgia. Shortly after he lost that election, President Trump sought to exploit conspiracies about voter fraud in Fulton County to overturn the results, including by seeking to decertify the election. Courts unanimously rebuffed those efforts; as Judge Cohen explained, "[t]o interfere with the result of an election that has already concluded and has been audited and certified on multiple occasions would be unprecedented[.]" *Trump v. Kemp*, 511 F. Supp. 3d 1325, 1339 (N.D. Ga. 2021); *see also* Oral Arg. Tr. 43:19–24, *Pearson v. Kemp,* No. 1:20-cv-4809-TCB (N.D. Ga. Dec. 7, 2020), ECF No. 79 ("Finally, in their complaint, the Plaintiffs essentially ask the Court for perhaps the most extraordinary relief ever sought in any Federal Court in connection with an election. They want this Court to substitute its judgment for that of two-and-a-half million Georgia voters who voted for Joe Biden, and this I am unwilling to do."). [2] Numerous investigations conducted over the following years—including by the Georgia State Election Board (the "SEB")—failed to substantiate the allegations

---

[2] The Court may take judicial notice of other court proceedings. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020).

of widespread fraud in Fulton County.[3] Indeed, the SEB entered into a consent order

with Fulton County resolving various complaints relating to the 2020 election. *See*

Consent Order, *In the Matter of Fulton County Board of Registration and Elections*,

SEB Case Nos. 2021-181, 2022-025 (June 8, 2023).

Despite this, the SEB has recently sought to relitigate issues relating to the

2020 general election in Fulton County, including by issuing multiple subpoenas

seeking ballot materials from that election. *See* Compl. ¶ 16 (describing October

2025 subpoena); *see also* Order Denying Quashal, *Allen v. State of Georgia*, No.

24CV014632 (Fulton Cnty. Super. Ct. Dec. 19, 2025) (in denying motion to quash

November 2024 subpoena, describing how the SEB has "remained peculiarly

fixated" on the 2020 election). In its most recent subpoena, the SEB sought "all used

and void ballots, stubs of all ballots, signature envelopes, and corresponding

envelope digital files from the 2020 General Election in Fulton County."

Compl. ¶ 17.

## II.    DOJ demands records from the 2020 election in support of SEB's repeated investigations.

When the Fulton County Clerk of Courts declined to produce the ballot

materials in response to the SEB's latest subpoena, *see* ECF No. 2-4 at 5–6, DOJ

---

[3] *See, e.g., State Election Board Clears Fulton County "Ballot Suitcase" Investigation; Report Finds No Evidence of Conspiracy, No Fraud*, Ga. Sec'y of State (June 20, 2023), https://sos.ga.gov/news/state-election-board-clears-fulton-county-ballot-suitcase-investigation-report-finds-no.

entered the fray. First, DOJ sent a letter to the Fulton County Board of Registration and Elections cross-referencing the SEB subpoena and demanding the same records. *See* Compl. ¶ 16; *see also* ECF No. 2-3. In response, the Fulton County Board explained that the records sought were kept under seal by the Fulton County Clerk of Courts and could not be unsealed absent an order from Fulton County Superior Court, in accordance with Georgia law. *See* ECF No. 2-4 at 2 (citing O.C.G.A. § 21-2-500). DOJ then sent a letter demanding the records to the Fulton County Clerk of Courts on November 21, 2025. *See* Compl. ¶ 23. DOJ asserted that the "purpose of [its] request is to ascertain Georgia's compliance with the various provisions of the National Voter Registration Act and Help America Vote Act," ECF No. 2-5 at 2—though the letter provided no basis to suspect Georgia or Fulton County were out of compliance with either statute, nor any explanation why the ballot materials sought would shed light on such compliance (nor does DOJ seek records from any election after 2020). When the Fulton County Clerk of Courts did not immediately respond to its demand, DOJ filed this suit on December 11, 2025, demanding ballot materials from the 2020 general election in Fulton County.

DOJ also filed a motion to compel, which asks the Court to "enter an Order directing Defendant to comply with the Attorney General's Demand pursuant to [Title III of the Civil Rights Act] and provide the identified records." Mem. in Supp. of Mot. for Order to Compel at 12 ("Mem."), ECF No. 2-1. In support of this

demand, DOJ claims that the Civil Rights Act "displaces the Federal Rules of Civil Procedure" and instead creates a "special statutory proceeding" in which the Defendant "must produce the voter-registration lists and other federal election records demanded by the Attorney General." *Id.* at 5, 11.[4]

### III.    DOJ attempts to invoke Title III of the Civil Rights Act to support its demand for ballot materials from the 2020 election.

DOJ's Complaint cites only one statute to support its demand—Title III of the Civil Rights Act of 1960. Title III has two relevant parts. First, Section 301 requires election officials to retain "for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Next, Section 303 requires election officials to make available for inspection by the Attorney General records "required by [Section 301] to be retained and preserved" upon receiving a "demand . . . contain[ing] a statement of the basis and purpose" for the inspection.

---

[4] DOJ's reference to "voter registration lists" appears to be an error—DOJ did not request such lists in this litigation. *See* Compl. at ¶¶ 16–17 (demanding records previously sought in a subpoena issued by the SEB, namely, "all used and void ballots, stubs of all ballots, signature envelopes, and corresponding envelope digital files from the 2020 General Election in Fulton County"). The source of the error is likely a cut-and-paste mistake from a motion to compel that DOJ filed in a separate case in which it is demanding Georgia produce its full, unredacted voter registration list, a suit that it has brought against nearly two dozen states. *See, e.g.*, Mot. to Compel Production, *United States v. Raffensperger*, No. 5:25-cv-00548-CAR (M.D. Ga. Dec. 18, 2025), ECF No. 2.

*Id.* § 20703.

Congress enacted Title III to buttress DOJ's enforcement and protection of voting rights. *See* H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" had been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"). Despite the Civil Rights Act of 1957's charge that DOJ combat the denial of the right to vote, its efforts to do so were stymied by "the refusal of some state and local authority to permit" inspection of voter registration records. *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* (explaining Title III is "an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin" (quoting *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959))). Congress thus enacted Title III's records preservation and disclosure rules to facilitate investigations into the "infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see also Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961).

Proposed Intervenors moved to intervene in this matter on December 16,

2025, just five days after DOJ sued. Proposed Intervenors' motion attached a proposed Answer in compliance with Rule 24(c) but also reserved the right to seek leave to file a motion to dismiss and respond to DOJ's accompanying motion. *See* ECF No. 4-1 at 12 n.5. Accordingly, Proposed Intervenors move to dismiss DOJ's Complaint and also oppose DOJ's motion for an order to compel production.

## LEGAL STANDARD

A complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court must accept "all well-pleaded facts in the plaintiff's complaint as true" but "need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations." *PerDiemCo LLC v. NexTraq LLC*, 720 F. Supp. 3d 1365, 1370–71 (N.D. Ga. 2024). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of surviving a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

## ARGUMENT

### I.    DOJ fails to state a claim under the Civil Rights Act.

DOJ's invocation of the Civil Rights Act of 1960 cannot support its demand for ballot materials from the 2020 general election in Fulton County. Its claim is barred by Title III's strict 22-month window for DOJ to inspect voting records, its

demand lacks a proper statement of basis and purpose, as the statute requires, and it does not even bother to explain why the ballot materials it seeks fall within Title III's scope. The Complaint should accordingly be dismissed for failure to state a claim.

### A.    DOJ's demand for ballot materials from 2020 is untimely.

The plain text of Title III confirms that DOJ's inspection rights expired 22 months after the 2020 election. Section 301 charges election officials with retaining certain records "for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, [or] Member of the House of Representatives . . . are voted for." 52 U.S.C. § 20701. Section 303 then requires that records "required by [Section 303] of this title to be retained and preserved" be "made available for inspection . . . by the Attorney General" if other statutory requirements are met. *Id.* § 20703. Accordingly, DOJ's inspection rights under Section 303 are limited to records required to be retained under Section 301. And since Section 301 only requires election officials to retain and preserve records for "a period of twenty-two months" after a federal election, it follows that DOJ's right to inspect those records under Section 303 expires 22 months after the election in question. *See Lynd*, 306 F.2d at 226 ("[T]here is no question for judicial determination as to how far back the records go. This, too, is fixed by the statute.").

Throughout its Complaint, correspondence, and motion to compel, DOJ provides no explanation why ballot materials from the 2020 general election remained covered by Title III in December 2025.

Since Title III's "plain language" is "unambiguous" in imposing the 22-month cut-off, the Court "need not—indeed, should not—look beyond that plain language to determine its meaning." *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1189–90 (11th Cir. 2018). "The plain language is presumed to express congressional intent and will control a court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002). Accordingly, ignoring the plain language of Title III would "prevent[] the effectuation of congressional intent." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016).

Here, the plain and unambiguous language of Title III makes clear that ballot materials from the 2020 general election in Fulton County are no longer subject to retention and inspection under the statute. DOJ thus fails to state a claim that the Fulton County Clerk violated Title III by refusing to permit inspection of those ballot materials, and the Complaint should be dismissed.

## B.    DOJ lacks a proper basis and purpose to demand records under Title III.

Title III also requires DOJ to state both "the basis *and* the purpose" for its demand to an election official. 52 U.S.C. § 20703 (emphasis added); *see United States v. Roberts*, 227 F. App'x 819, 822 (11th Cir. 2007) (holding "and" is typically

used conjunctively to indicate "independent prongs must be satisfied"). DOJ's demand to the Fulton County Clerk fails on both counts.

Beginning with the basis for DOJ's request, its letter to the Fulton County Clerk is entirely silent on this question. *See* Nov. 21, 2025 Letter, ECF No. 2-5. At most, DOJ's November 21 letter stated the "purpose" of the demand—to "ascertain Georgia's compliance with various provisions of the" NVRA and HAVA—but offered no basis to believe that either statute had been violated.[5] This failure distinguishes DOJ's present demand from the authorities DOJ cites; in each, DOJ provided an explicit statement of "basis" and "purpose" as required by Title III. In *Kennedy v. Lynd*, for instance, DOJ's demand letter to election officials said:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229 n.6 (emphases added) (internal quotation marks omitted); *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*,

---

[5] DOJ attached this letter to its motion to compel and cited it in support of its complaint. *See* Compl. ¶ 23. The Court may therefore consider this letter along with the Complaint without converting the motion to dismiss into a motion for summary judgment because the letter is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

313 F.2d 867 (5th Cir. 1963). Here, in contrast, DOJ's letter did not provide any reason to believe that Fulton County violated any federal voting rights law—or any federal law, for that matter. "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitutes an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018). This failure is fatal to DOJ's claim.

DOJ also fails to articulate a proper purpose because its purported desire to "ascertain Georgia's compliance with various provisions of the" NVRA and HAVA, ECF No. 2-5, is beyond the scope of Title III. Congress enacted the record retention provisions of the Civil Rights Act "to secure a more effective protection of the right to vote." *Gallion*, 187 F. Supp. at 853; *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). In interpreting the requirement that DOJ state "the purpose" for its demand, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). The term "purpose"

must be read in the specific context of the Civil Rights Act of 1960—a law designed to buttress DOJ's enforcement and protection of voting rights. *See* H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"). Indeed, throughout its Complaint, correspondence, and motion to compel, DOJ has yet to cite a single instance in the 65 years of Title III's existence in which a court read Title III to require the production of records in response to a demand that did not relate to "infringement or denial of . . . constitutional voting rights." *Lynd,* 306 F.2d at 228.

Consistent with these principles of statutory interpretation, multiple district courts have in just the past few months quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, *17 (E.D. Pa. Nov. 21, 2025) (striking subpoena demands for records when DOJ "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see also In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sept. 9, 2025) (quashing subpoena for records when DOJ "failed to show proper purpose" and rejecting notion that "the Government's self-proclaimed say-so" is

sufficient to "preclude any form of judicial review").[6] This Court should do the same.

### C.   DOJ's request for ballot materials is irrelevant to its stated purpose.

Further, even if assessing compliance with the NVRA and HAVA were permissible grounds for invoking Title III, DOJ fails to specify how the ballot materials it seeks could be used to assess compliance with any obligation under either statute. For good reason: the NVRA primarily concerns voter *registration*. The statute, for instance, directs states to expand opportunities to register to vote, erects guardrails on state attempts to remove voters from registration lists, and charges states with engaging in certain efforts to ensure the accuracy of voter lists. These requirements have nothing to do with the ballot materials DOJ seeks here. *See, e.g.*, 52 U.S.C. §§ 20503, 20507. Similarly, Congress enacted HAVA "to improve voting systems and voter access," *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024), including by requiring states to maintain a statewide computerized voter registration list, 52 U.S.C. § 21083, among

---

[6] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was being used for its intended purpose—investigations into the potential denial of voting rights—and are fundamentally distinguishable from the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

other sweeping reforms to improve election administration and modernize voting systems. DOJ's passing references to HAVA make no attempt to connect its intrusive demands for five-year-old ballot materials with the statute's requirements. *See* ECF Nos. 2-3, 2-5.

Without more, the Court should reject DOJ's "threadbare" and "conclusory statements" that its purpose in issuing its demand is to assess Georgia's compliance with federal statutes. *Iqbal*, 556 U.S. at 678–79. At the motion to dismiss stage, courts "need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party." *Willis v. Arp,* 165 F. Supp. 3d 1357, 1359 (N.D. Ga. 2016). To the contrary, courts have rejected "perfunctory" statements of purpose in issuing civil investigative demands, recognizing that agencies are "not afforded unfettered authority to cast about for potential wrongdoing." *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (cleaned up); *see also CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (quashing civil investigative demand with "uninformative catch-all" statement of purpose). The Court should therefore dismiss DOJ's Complaint for failure to state a proper basis and purpose for its demand.

**D.    DOJ fails to allege the requested records fall within Title III's scope.**

Title III applies only to records "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Here, DOJ demands records previously sought by the SEB's 2025 records subpoena. *See* Compl. ¶ 16 (demanding "all records in your possession responsive to the recent subpoena issued to your office by the State Election Board"). The SEB's subpoena sought "all used and void ballots, stubs of all ballots, signature envelopes, and corresponding envelope digital files from the 2020 General Election in Fulton County." *Id.* ¶ 17.

While demanding access to all subpoenaed documents in general, DOJ fails to specify which of these documents it believes relate to "any application, registration, payment of poll tax, or other act requisite to voting." Instead, DOJ alleges simply that (i) it demanded the records, (ii) its demand had a statement of basis and purpose, and (iii) the Fulton County Clerk of Courts failed to provide the records. *See* Compl. ¶¶ 25–27. That is not sufficient. Though the *SEB* was not required to cabin its request to records that fall under Title III, DOJ is—otherwise, it has no claim that the Fulton County Clerk of Courts violated Title III by refusing to provide the demanded records, and its complaint must be dismissed.[7] *See Thomas*

---

[7] Compounding this defect, DOJ's motion to compel again fails to address whether the records it seeks fall within Title III's scope.

*v. LDG Fin. Servs., Inc.*, 463 F. Supp. 2d 1370, 1372 (N.D. Ga. 2006) ("Dismissal is appropriate . . . if the complaint fails to allege facts regarding an element of the claim necessary to obtain relief.").

## II.    DOJ's Motion to Compel is improper.

Even if the Court were to rule that DOJ's lawsuit survives dismissal, it should reject DOJ's request to supplant the Federal Rules of Civil Procedure with a "summary statutory proceeding." Mem. at 11. The Federal Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). And while Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules— such as certain admiralty or bankruptcy actions—none involves the Civil Rights Act of 1960. *See* Fed. R. Civ. P. 81(a). Indeed, Rule 81(a)(5) *affirms* that the Federal Rules even apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or by court order in the proceedings."

Title III of the Civil Rights Act does not authorize DOJ to improvise federal court procedures, and DOJ itself does not cite Rule 81(a)(5) in support of its departure from the normal course of proceedings under the Federal Rules. Accordingly, based on the plain text of Rule 1, this action must be governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statute or the Federal Rules themselves.

### A.    The Civil Rights Act of 1960 does not displace the Federal Rules.

DOJ pins its motion to compel on the Civil Rights Act of 1960, claiming that the statute "displaces" the Federal Rules and creates a "special statutory proceeding." Mem. at 5. But nothing in the text supports this conclusion. The statute merely assigns jurisdiction to hear disputes under Title III to "[t]he United States district court for the district in which a demand is made," and provides that such courts may "by appropriate process" compel the production of covered records. 52 U.S.C. § 20705. Nothing in that unremarkable grant of jurisdiction exempts Title III cases from the Federal Rules or immunizes DOJ's demand from meaningful judicial review. Nor does the term "summary proceeding" or any comparable phrase appear anywhere in the statute, as DOJ suggests.

Finding no support in the statutory text, DOJ instead relies primarily on an opinion from a 1962 case that describes an action to enforce Title III of the Civil Rights Act of 1960 as a "special statutory proceeding" with minimal judicial involvement. Mem. at 5 (quoting *Lynd*, 306 F.2d at 225). But *Lynd*'s conclusion on that score was also untethered to the statutory text, and the Supreme Court has since clarified that in order to invoke the powers of a federal court to enforce a subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case.

*United States v. Powell*, 379 U.S. 48, 57–58 (1964). As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (noting "an abuse would take place if the summons had been issued for an improper purpose"). *Lynd*'s refusal to engage in judicial review of government document requests is irreconcilable with the Supreme Court's subsequent ruling in *Powell* and thus is not controlling on that point.

For the same reasons, *Powell* also rebuffed the government's attempt to depart from the Federal Rules, holding that because the statute at issue "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18. The jurisdictional provision in the subpoena statute interpreted by *Powell* closely parallels the Civil Rights Act of 1960. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data." (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)). The Supreme Court has made clear that claimants cannot

19

evade the Federal Rules under such a provision, thus foreclosing any notion that Title III's simple jurisdictional grant and reference to "appropriate process" requires departing from the Federal Rules.

Following *Powell*, courts have regularly engaged in meaningful judicial review of government document requests. *E.g.*, *Presley v. United States*, 895 F.3d 1284, 1289 (11th Cir. 2018) (applying *Powell*); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d at 690; *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *12, *17; *In re Admin. Subpoena No. 25-1431-019*, 2025 WL 2607784, at *5. Since nothing in the text of the Civil Rights Act exempts Title III enforcement actions from judicial review or the Federal Rules, there is no reason why Title III should be treated differently. The Court should thus reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure." Mem. at 5.

Finally, even if *Lynd* were good law on this point, the facts before the court there also differ starkly from those here. To start, DOJ's demands in *Lynd* were "[c]learly within the time cutoff period" under Title III, 306 F.2d at 228, whereas DOJ's present demand for materials from the 2020 general election is tardy by over three years. As *Lynd* explained, if there were a "substantial question" about whether

a record fell "within the 22-month period preceding" the Title III demand, the court must "be open to determine that issue on the basis of the statutory standard." *Id.* at 227.

Also unlike here, there was no reason in *Lynd* to doubt that DOJ invoked Title III for a valid purpose. As the court explained, Title III's "clearest purpose[]" is to permit investigations "concerning infringement or denial of . . . voting rights." *Id.* at 228. In *Lynd*, DOJ was doing just that: demanding voter records from counties in Jim Crow-era Mississippi and Louisiana based on evidence of discrimination "with respect to registration and voting within [the] jurisdiction." *Id.* at 229 n.6. In stark contrast, here DOJ purports to invoke Title III to "ascertain" whether Fulton County complied with its "list maintenance requirements" *under the NVRA and HAVA,* Mem. at 5—an unprecedented theory that has nothing to do with the concerns animating the Civil Rights Act. DOJ nonetheless seeks to jury-rig Title III to purportedly enforce statutes that were passed long after the Civil Rights Act, one of which (the NVRA) has its own distinct disclosure rules enacted by Congress. *See* 52 U.S.C. § 20507(i).

*Lynd* thus provides no support for DOJ's attempt to circumvent the Federal Rules here.

**B.    Motions to dismiss are the proper vehicle for resolving this case or, alternatively, the next step before proceeding to discovery.**

Consistent with the above, the Court can and should resolve this case via motions to dismiss, not through a "motion for an order to compel" that is not sanctioned by the Federal Rules or any relevant statute.[8]

Resolving Rule 12(b) motions—and not DOJ's self-styled "motion for an order to compel"—is the appropriate next step in this case. After all, the Federal Rules provide for motions to dismiss at the start of a case for a simple and sound reason: to "test[] the legal sufficiency of the complaint." *Astral Health & Beauty, Inc. v. Aloette of Mid-Mississippi, Inc.*, 895 F. Supp. 2d 1280, 1282 (N.D. Ga. 2012). To survive such a motion, a plaintiff's "allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Motions to dismiss thus serve the "important task of weeding out meritless lawsuits[.]" *Smith v. Delta Air Lines Inc.*, 619 F. App'x 874, 876 (11th Cir. 2015). In light of the fatal legal deficiencies in DOJ's complaint, resolving its motion for an order to compel first would get things backwards,

---

[8] Though Rule 37 authorizes certain motions to compel, that Rule plainly does not apply here because DOJ seeks dispositive relief, akin to summary judgment, not to compel *discovery*, as contemplated by the Rules. *See* Fed. R. Civ. P. 37(a).

depriving Proposed Intervenors and the existing Defendant of their opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claims, including on its dubious assertion that its purpose in seeking the 2020 Fulton County ballots is to ascertain Georgia's compliance with the NVRA and HAVA—which, as explained above, is plainly pretextual. Awarding DOJ the final relief it seeks now would effectively grant DOJ summary judgment, contrary to the Eleventh Circuit's admonition that summary judgment "should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (reversing grant of summary judgment); *see also Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) (finding district court abused its discretion in granting summary judgment before completion of discovery). The Court should, accordingly, permit this case to unfold in the normal course under the Federal Rules.

## CONCLUSION

Proposed Intervenors respectfully request that the Court dismiss DOJ's Complaint for failure to state a claim on which relief can be granted, and deny DOJ's Motion for an Order to Compel Production.

Dated: January 5, 2026

*/s/ Uzoma N. Nkwonta*

Uzoma N. Nkwonta*
Branden D. Lewiston*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
unkwonta@elias.law
blewiston@elias.law
mmcqueen@elias.law
Tel: (202) 968-4652

Adam M. Sparks
Ga. Bar. No. 341578
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
Suite 3500, One Atlantic Center
Atlanta, GA 30309
Tel: (404) 888-9700
Fax: (404) 888-9577
Email: sparks@khlawfirm.com

*Counsel for Black Voters Matter Fund,*
*CWA Local 3204, and*
*CWA Local 3204 Retired Members Council*

*Appearing *pro hac vice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, NDGa, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C, NDGa. This document was prepared on a computer using Times New Roman font (14 point).

This 5th day of January, 2025.

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta