IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHÉ ALEXANDER, Clerk of Courts for Fulton County,<br><br>Defendant. | Case No. 1:25-cv-07084-TWT |

**DEFENDANT'S COMBINED MEMORANDUM OF LAW
(A) IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND (B) IN OPPOSITION TO
PLAINTIFF'S "MOTION FOR ORDER TO COMPEL RECORDS
DEMANDED PURSUANT TO THE CIVIL RIGHTS ACT OF 1960"**

Michael W. Tyler
Georgia Bar No. 721152
C. Allen Garrett Jr.
Georgia Bar No. 286335
Jennifer Cotton
Georgia Bar No. 520708
KILPATRICK TOWNSEND
   & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Phone: (404) 815-6020
Fax: (404) 816-6555
mtyler@ktslaw.com
agarrett@ktslaw.com
jcotton@ktslaw.com

*Counsel for Defendant*

Defendant Ché Alexander, sued in her official capacity as Clerk of Courts for Fulton County (the "Clerk"), respectfully submits this memorandum (a) in support of her contemporaneously-filed motion to dismiss the Complaint filed by Plaintiff United States of America (Doc. 1) and (b) in opposition to Plaintiff's "Motion for Order to Compel Production of Records Pursuant to 52 U.S.C. § 20701" ("Motion to Compel") (Doc. 2). Plaintiff's Complaint should be dismissed, and the Motion to Compel should be denied, because Plaintiff seeks materials outside the scope of the Civil Rights Act of 1960, 52 U.S.C. § 20701, et seq. At a minimum, Plaintiff should file a motion with the Fulton County Superior Court to unseal the requested 2020 election materials in accordance with O.C.G.A. §§ 21-2-500(a) and 21-2-390, so that all affected persons can be heard and appropriate steps can be taken to protect privacy and security interests applicable to the materials.

## Introduction

Plaintiff's Complaint constitutes the latest chapter in the five-plus year effort by various parties to challenge the results of the 2020 election. The Complaint and Motion to Compel seek an order compelling the Clerk to produce ballots, ballot stubs, and absentee ballot envelopes from the 2020 election. But Plaintiff predicates this request on the Civil Rights Act of 1960, which addresses state efforts to impede voter registration and does not address alleged irregularities in vote tabulation. Because ballots, ballot

stubs, and absentee voter envelopes from the 2020 election have nothing to do with voter registration requirements, Plaintiff's Complaint should be dismissed and its Motion to Compel should be denied.

As both the Clerk and the Fulton County Board of Registration and Elections ("Fulton BRE") previously explained to Plaintiff, moreover, these materials from the 2020 election remain under seal in the Fulton County Superior Court. In accordance with O.C.G.A. §§ 21-2-500(a) and 21-2-390(a), Plaintiff should file a motion to unseal those materials in the Superior Court, so that all interested persons (including Fulton BRE and any groups acting on behalf of voters, such as the intervenors in this action) can be heard regarding privacy and security concerns with these 2020 election materials.

Because the Civil Rights Act of 1960 does not encompass these 2020 election materials, and because these 2020 election materials remain under seal in the Fulton County Superior Court, Plaintiff's Complaint should be dismissed and Plaintiff's Motion to Compel should be denied.

## Background

Numerous lawsuits have been filed, and numerous investigations have been conducted, regarding alleged concerns with the results of the 2020 election in Fulton County. (*See, e.g.*, Doc. 4-1, at 9-10 [.pdf pagination] & nn.2-4.) Among other things, a Performance Review Board appointed by Georgia's State Election Board in 2021 comprehensively reviewed numerous

complaints regarding the 2020 election before issuing a report in 2023 that recommended against suspending or removing Fulton BRE. *See Sherri Allen, et al. v. State of Georgia*, Am. Pet. for Declaratory and Injunctive Relief Regarding State Election Board Subpoenas ¶¶ 1-4, Civ. A. No. 24CV014632 (Ga. Super. Ct., Fulton Cnty. filed Sept. 3, 2025) (copy with certain voluminous exhibits omitted attached as **Exhibit 1**).

On November 3, 2024 (the day of the 2024 general election), Georgia's State Election Board issued subpoenas to Fulton BRE[1] for information relating to the 2020 election. *See generally id.* Fulton BRE challenged those subpoenas in Fulton County Superior Court and—after proceedings had been stayed to allow the parties to discuss a potential negotiated resolution—the Superior Court issued an "Order Denying Quashal" on December 19, 2025. *See Sherri Allen, et al. v. State of Georgia*, Order Denying Quashal, Civ. A. No,. 24CV014632 (Ga. Super. Ct., Fulton Cnty. Dec. 19, 2025) (copy attached as **Exhibit 2**). In this Order, the Superior Court indicated that it would require Fulton BRE to comply with the State Election Board's subpoenas but also would require the State Election Board to pay Fulton BRE's costs associated with compliance with the subpoenas. *See id.* at 4.

---

[1] The State Election Board issued two subpoenas, to Fulton BRE and to the Fulton County Department of Registration and Elections. For ease of reference, this memorandum refers to these entities jointly as "Fulton BRE."

- 3 -

In the meantime, the State Election Board issued new subpoenas to the Clerk and to Fulton BRE on October 6, 2025, requesting that ballots, ballot stubs, and absentee ballot envelopes from the 2020 election be made available for inspection and copying. The Clerk responded on October 21, 2025, explaining that these 2020 election materials were "under seal pursuant to O.C.G.A. § 21-2-500 and may not be produced absent a Court Order." (Doc. 2-4, at 5-6.) Fulton BRE similarly responded on October 22, stating that the requested 2020 election materials were under seal in the Fulton County Superior Court. (*Id.* at 3-4.)

On October 30, 2025, Plaintiff requested that Fulton BRE "present for inspection" the 2020 election materials responsive to the State Election Board's recent subpoena. (Doc. 2-3.) Plaintiff's letter cited as authority for this request "Title III of the Civil Rights Act of 1960 ('CRA')." (*Id.* at 1).

Fulton BRE responded to Plaintiff on November 14. (Doc. 2-4, at 1-2.) As Fulton BRE explained, the CRA requires, for 22 months after a federal election, the retention of records "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." (*Id.* at 1 (citing 52 U.S.C. § 20701).) Because ballots, ballot stubs, and absentee ballot envelopes for the 2020 election do not constitute voter registration materials, Fulton BRE objected to Plaintiff's request. (*Id.* at 1-2 (further explaining that

- 4 -

the CRA targets alleged civil rights violations and does not address alleged "voter fraud") (citations omitted).)

Fulton BRE's response to Plaintiff also attached the Clerk's and Fulton BRE's October 21 and 22 responses to the State Election Board's recent subpoenas, reiterating that the ballots, stubs, and absentee ballot envelopes remain "under seal" with the Fulton County Superior Court. (*Id.* at 2.)

Plaintiff then wrote the Clerk on November 21, again requesting production of the ballots, stubs, and absentee ballot envelopes requested by the State Election Board's recent subpoenas. (Doc. 2-5.) This letter did not include the language in 52 U.S.C. § 20701 limiting the CRA's scope to voter registration materials and did not address Fulton BRE's argument (in Fulton BRE's November 14 response to Plaintiff) that the CRA does not encompass ballots, ballot stubs, and absentee ballot envelopes. (*Id.* at 1-2.)

Plaintiff filed this litigation on December 11 and served the Clerk on December 15, the day before the December 16 deadline for production of the 2020 election materials stated in Plaintiff's November 21 letter to the Clerk. (*Compare id.* at 2, *with* Docs. 1 (Complaint) & 6 (Return of Service).) Neither Plaintiff's Complaint nor Plaintiff's Motion to Compel addresses the CRA's limitation to voter registration materials or responds to Fulton BRE's argument that the CRA does not encompass ballots, ballot stubs, and absentee ballot envelopes. (*See* Docs. 1, 2, 2-1.)

- 5 -

**Argument**

Plaintiff lacks authority under the CRA to demand production of ballots, ballot stubs, and absentee ballot envelopes from the 2020 election. As Plaintiff's own authorities explain, the CRA targets discriminatory voter registration practices and should be given a "strict and literal" interpretation. Because the requested 2020 election materials have nothing to do with voter registration, the CRA does not apply.

Under Georgia law, moreover, these 2020 election records remain under seal in the Fulton County Superior Court. Plaintiff should file a motion to unseal these records in that Superior Court so that all impacted persons (including Fulton BRE and groups acting on behalf of impacted voters) can be heard regarding pertinent privacy and security interests in these materials.

Accordingly, Plaintiff's Complaint should be dismissed and Plaintiffs' Motion to Compel should be denied.

**I.  Plaintiff lacks authority under the CRA to seek ballots, ballot stubs, and absentee ballot envelopes from the 2020 election.**

Plaintiff's Complaint and Motion to Compel rely on Title III of the CRA, 52 U.S.C. § 20701, et seq. (*See* Docs. 1, 2.) But the CRA solely targets voter registration materials:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President . . . all records and papers which come into his

>possession *relating to any application, registration, payment of poll tax, or other act requisite to voting in such election* . . . .

52 U.S.C. § 20701 (emphasis added).

As Plaintiff's own cited authority recognizes, the materials covered by Section 20701 have been "specifically identified by Congress" in the language highlighted above. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). The purpose of the targeted "investigative" provisions in Title III is "to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted," *i.e.*, actions to determine whether state officials engaged in racially discriminatory voter registration practices that interfered with the right to vote under 42 U.S.C. § 1971 (now codified at 52 U.S.C. § 10101). *Id.* at 228; *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (quoting language stating demand arose from information in possession of Attorney General "tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction").

Thus, Title III is "designed to secure a more effective protection of the right to vote," by facilitating "investigations of registration practices" as an "essential step in the process of enforcing and protecting the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961). Given the unambiguous scope of records encompassed by

Title III, courts regularly have enforced requests for voter registration materials in connection with alleged civil rights violations. *See, e.g., id.*

Here, however, Plaintiff does not seek voter registration materials in connection with alleged civil rights violations. (*See* Doc. 2-5.) Plaintiff's letter to the Clerk cites as its "purpose" an assessment of "Georgia's compliance" with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA") but does not request any materials pertinent to those statutes. (*See id.* at 2.) While Plaintiff's Motion to Compel specifies "certain recordkeeping duties" under NVRA and HAVA, none of the cited statutes references ballots, ballot stubs, or absentee ballot envelopes. (*See* Doc. 2-1 (citing 52 U.S.C. §§ 20507(a)(4) (referring to removal of ineligible voters from voter lists), 20507(i)(1) (referring to records relating to "accuracy and currency of official lists of eligible voters"), and 21083(a)(1)(A) (addressing requirement of "computerized statewide voter registration list").)

Plaintiff separately has commenced litigation against Georgia's Secretary of State that seeks production of Georgia's statewide voter registration list and relies on NVRA and HAVA. *See United States v. Raffensperger*, Compl., No. 5:25-cv-00548-CAR (M.D. Ga. filed Dec. 18, 2025). The Motion to Intervene cites decisions in two other cases similarly involving Plaintiff's efforts to secure state voter registration information. (*See* Doc. 4-1, at 20 (citing *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL

- 8 -

3496571 (D. Or. Dec. 5, 2025), and *United States v. Benson*, No. 1:25-cv-1148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025)).) Unlike these cases, Plaintiff's Complaint and Motion to Compel in this action do not seek information even arguably related to voter registration but instead seek the votes themselves.

Plaintiff's prior correspondence to Fulton BRE, moreover, confirms that Plaintiff does not seek this information to investigate purported civil rights violations in voter registration requirements. (*See* Doc. 2-3.) There, Plaintiff noted that the State Election Board had requested the assistance of Plaintiff "to effect compliance with voter transparency," which Plaintiff asserted "appears to have been frustrated at multiple turns in Georgia." (*Id.* at 2.) Plaintiff also referred to correspondence alleging "government obstruction of transparency requests, including high-resolution ballot scans, signature verification documentation, and various metadata requests." (*Id.*) Thus, Plaintiff's actual purpose for seeking the 2020 election materials appears to be an investigation of alleged election irregularities more than five years ago—well outside the 22-month window of Section 20701—rather than allegedly discriminatory voter registration practices. (*See also* Doc. 1 ¶ 15 (similarly stating that State Election Board has elicited Plaintiff's assistance "to effect compliance with voting transparency").)

While most decisions addressing Title III arose shortly after enactment of the CRA in 1960, Judge Rosenbaum recently discussed the limited scope of

- 9 -

the CRA in concurring in the affirmance of a remand of a criminal action against a former federal official for interfering with the 2020 election. *See Georgia v. Clark*, 119 F.4th 1304 (11th Cir. 2024) (Rosenbaum, J, concurring). Explaining that the former federal official had identified "no law Congress enacted that gave the President or DOJ power to intervene in Georgia's elections," the concurring opinion surveyed other federal statutes, including the voting statutes collected in the DOJ's own *Justice Manual*. *Id.* (quoting U.S. Dep't of Just., Just. Manual § 8-2.270). All these statutes—including the CRA, *see id.*—"focus on civil-rights violations," and "[n]one are concerned with purported voter fraud." *Id.*; *see also, e.g.*, *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1330 (N.D. Ga. 2020) ("It is well understood that 'garden variety' election disputes, including 'the ordinary dispute over the counting and marking of ballots' do not rise to the level of a constitutional deprivation.'" (quoting *Curry v. Baker*, 802 F.2d 1302, 1314-15 (11th Cir. 1986))), *aff'd on other grounds*, 981 F.3d 1307, 1310 (11th Cir. 2020) ("The Constitution makes clear that federal courts are courts of limited jurisdiction, U.S. Const. art. III; we may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts.").

Plaintiff's Complaint opens with the "clear and unambiguous" language of Section 20701 encompassing voter registration materials. (Doc. 1 ¶ 1; *see*

*also id.* ¶ 13.) And Plaintiff's Motion to Compel cites authority recognizing that Title III of the CRA should be given a "strict and literal interpretation." *In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (explaining that Plaintiff's investigation under Title III is "limited to an examination and copying of the records ***designated in the Act***" (emphasis added)). But Plaintiff does not seek any voter registration materials covered by the CRA, instead requesting that this Court order production of ballots, ballot stubs, and absentee ballot envelopes from the 2020 election. Because the CRA—the federal authority cited to support Plaintiff's Complaint—does not authorize Plaintiff's demand for these materials, Plaintiff's Complaint should be dismissed and Plaintiff's Motion to Compel should be denied.

## II. Any request for 2020 election materials that remain under seal in Fulton County Superior Court should proceed as a motion to unseal in that Superior Court.

Georgia law requires ballots, ballot stubs, and absentee ballot envelopes to be delivered to the "clerk of the superior court" and retained for a period of 24 months. O.C.G.A. §§ 21-2-390(a) (absentee ballot envelopes), 21-2-500(a) (ballots and ballot stubs). Ballots and ballot stubs must be held "under seal," and absentee ballot envelopes similarly must be "safely kept" by the Clerk. *Id.*

As a result of continuing litigation regarding the 2020 election, the ballots, ballot stubs, and absentee ballot envelopes from the 2020 election

remain under seal in the Fulton County Superior Court. Assuming Plaintiff could identify a legitimate basis for access to these 2020 election materials (which the CRA does not provide), Plaintiff should seek an order from a judge of the Fulton County Superior Court unsealing these materials—not an order from a federal court compelling the production of those sealed materials. *See Trump v. Kemp*, 511 F. Supp. 3d 1325, 1334-35 (N.D. Ga. 2021) (finding federal court lacked jurisdiction to grant requested relief regarding outcome of 2020 election and stating: "Federal courts 'do not intervene in state election contests for the purpose of deciding issues of state law.'" (quoting *Hubbard v. Ammerman*, 465 F.2d 1169, 1181 (5th Cir. 1972))).

An action seeking an order from the Fulton County Superior Court unsealing the 2020 election materials would allow all interested persons to appear and be heard regarding privacy, security, or other interests in connection with the 2020 election materials. The proposed intervenors in this action, for example, could raise their privacy concerns and request appropriate redactions of personally identifying information from the 2020 election materials. (*See* Docs. 4, 4-1.) Fulton BRE likewise could fulfill its obligations to ensure the security of the 2020 election materials and the protection of voters' privacy interests, including securing appropriate commitments by Plaintiff to limit disclosure of any accessed materials in accordance with Section 20704. *See* 52 U.S.C. § 20704 (limiting Plaintiff from

disclosing materials produced under Section 20703 except "to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury").

Section 20703, moreover, only requires that materials covered by Section 20701 "be made available for inspection, reproduction, and copying" by Plaintiff. 52 U.S.C. § 20703. Plaintiff's letter to the Clerk (as with Plaintiff's letter to Fulton BRE), however, closes with a request that the Clerk send the information "by encrypted email" or "via the Department's secure file-sharing system." (Doc. 2-5, at 2.) To the extent Plaintiff seeks to impose on the Clerk any obligation to digitize information not already digitized—particularly information such as absentee ballot envelopes that may include personally identifying information that must be redacted—Plaintiff should bear the costs attendant to such efforts, consistent with the Fulton County Superior Court's recent order in the related litigation involving different subpoenas issued by the State Election Board regarding the 2020 election. *See* **Exhibit 2**.

## CONCLUSION

For the foregoing reasons, the reasons to be stated at any hearing in this matter, and the reasons stated in "Black Voters Matter Fund, CWA Local 3204, and CWA Local 3204 Retired Members Council's Proposed Combined Memorandum in Support of Motion to Dismiss and in Opposition to Motion for Order to Compel" (Doc. 17-2), which Defendant incorporates herein by reference, Plaintiff's Complaint should be dismissed and Plaintiff's Motion to Compel should be denied.

Respectfully submitted, January 5, 2026.

/s/ Michael W. Tyler
Michael W. Tyler
Georgia Bar No. 721152
C. Allen Garrett Jr.
Georgia Bar No. 286335
Jennifer Cotton
Georgia Bar No. 520708

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Phone: (404) 815-6500
Fax: (404) 815-6555
mtyler@ktslaw.com
agarrett@ktslaw.com
jcotton@ktslaw.com

*Counsel for Defendant*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing has been prepared in 13-point Century Schoolbook font in accordance with Local Rule 5.1(C).

Dated:  January 5, 2026.

/s/ Michael W. Tyler
Michael W. Tyler

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2026, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send email documentation of such filing to the attorneys of record.

/s/ Michael W. Tyler
Michael W. Tyler
