# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>CHÉ ALEXANDER, Clerk of Courts for Fulton County, et al.,<br><br>Defendants. | CASE NO: 1:25-cv-07084-TWT<br><br>OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT |

**OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S**

**COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1
STATEMENT OF FACTS ...........................................................................1
LEGAL STANDARD ..................................................................................2
MOTIONS TO DISMISS ARE NOT PROPER WHEN THE ATTORNEY GENERAL BRINGS A CLAIM UNDER TITLE III. ..............................................3
THE ATTORNEY GENERAL IS ENTITLED TO THE DEMANDED RECORDS ........................................................................................................5
STATES CANNOT FRUSTRATE THE ATTORNEY GENERAL'S INVESTIGATIVE POWERS BY SEALING ELECTION RECORDS ...................8
CONCLUSION ..........................................................................................10

## INTRODUCTION

Congress has charged the Attorney General with enforcing the voting rights of Americans and has granted the Attorney General sweeping prelitigation investigative powers. Title III of the Civil Rights Act of 1960 (CRA) provides that upon a demand from the Attorney General to any person having custody, possession, or control of any record or paper relating to any application, registration, payment of poll tax, or other act requisite to voting, such record or paper shall be produced. 52 U.S.C. §§20701, 20703.

In their pending motions, Defendants seek to rewrite the Civil Rights Act and place restrictions and limitations on the power granted to the Attorney General that have no basis in law. Defendants further request that the Court deviate from the summary procedures dictated by the CRA and expounded upon by previous Courts that have addressed the issue. *See e.g. Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). The Court should refuse the Defendants' invitation and deny their motions.

## STATEMENT OF FACTS

On November 21, 2025, the Attorney General, through her representatives, made a written demand to the Defendant to produce the "physical ballots, stubs, and absentee ballot envelopes for the 2020 General Election." *See* Decl. of Eric Neff, Ex. 3, Doc. 2 ("November 21 Letter"). These records and documents are in the custody and control of Defendant Alexander. The demand for these documents and records was based on "the Attorney General's authority under the Civil Rights Act

of 1960." *Id.* The November 21 Letter further stated the purpose of the demand was to "ascertain Georgia's compliance with various provision of the National Voter Registration Act and the Help America Vote Act, including without limitation compliance with election technology and administration standards, 52 U.S.C.§§ 20501-20511, 20901-21145." No response was received from Defendant Alexander.

## LEGAL STANDARD

The Attorney General's filing of its application for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd,* at 225. It is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.* Congress has thereby indicated its intent that the Federal Rules of Civil Procedure are inapplicable. "Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225-26; *see also Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960) (comparing applications to compel to actions by the Securities and Exchange Commission in which procedural rules "are made specifically inapplicable to investigations").

The CRA restricts the Court to a "severely limited" inquiry: (1) did the Attorney General make a written demand for federal election records stating the basis and purpose; (2) was that demand made to one or more "officer[s] of election"

responsible for performing any act requisite to voting in federal elections including voter registration; (3) did the officer(s) of election fail or refuse to make the demanded federal election records "available for inspection, reproduction, and copying"; and (4) did the Attorney General make "a simple statement" to this Court that she satisfied the first three elements. *Lynd* at 225-26; *see also* 52 U.S.C. § 20703. The Court is required to treat the enforcement action as a summary proceeding. *Lynd* at 226.

## MOTIONS TO DISMISS ARE NOT PROPER WHEN THE ATTORNEY GENERAL BRINGS A CLAIM UNDER TITLE III.

The "chief purpose" of Title III of the CRA "is to facilitate the investigation of the records *before suit is filed*." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam) (emphasis added). "[T]he function sought to be exercised by the Attorney General is… purely investigative," *Gallion*, 187 F. Supp. at 854, to evaluate "possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) ("*Coleman II*"). As such, when the Attorney General makes an application to a court to enforce a demand for election records, it is comparable to a traditional order to show cause. *Lynd* at 225.

Courts have consistently held that the filing of such an application by the Attorney General under the Civil Rights Act is not an ordinary proceeding subject to the Federal Rules of Civil Procedure. *Lynd*, 306 F.2d 222; *see Kennedy v. Bruce*,

298 F.2d 860, 863 (5th Cir. 1962); *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963). In *Lynd*, the Court explicitly stated that "there is no place for any other procedural device or maneuver — either before or during any hearing of the application — to ascertain the factual support for or the sufficiency of the Attorney General's statement of the basis and purpose therefore as set for in the written demand." *Lynd* at 226; *cf. United States v. Powell* 379 U.S. 48 (1964) (analyzing the process by which an IRS administrative subpoena can be enforced under a different set of statutes not applicable to the CRA).

It does not require known violations of federal law or even allegations of misconduct. In that manner, Title III enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Lynd* at 228. "Congress has specifically committed the investigative responsibility to the Attorney General and has equipped [her] with machinery thought suitable for the effective fulfillment of that obligation" through Title III of the CRA. *Id*. at 230.[1]

---

[1] Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Bisceglia*, 420 U.S. 141, 148 (1975).

## THE ATTORNEY GENERAL IS ENTITLED TO THE DEMANDED RECORDS

The CRA provides "every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…." 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974). The CRA further provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703.

The Defendant attempts to narrow the broad scope of the Attorney General's investigative authority to racially discriminatory voter registration practices. *See* Def. Mot. To Dismiss, Doc. 18, at 7; Intervenor's Mot. To Dismiss, Doc. 17, at 21. However, nothing in Title III of the CRA provides such a limitation. Racial discrimination does not appear anywhere in the statutory text of Title III. It is sufficient that the Attorney General's demand "was made for the purpose of investigating possible violations of a Federal statute." *Coleman II*, 313 F.2d at 868 (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate,"

at 106 Cong. Rec. 7767); *see also Coleman v. Campbell*, 208 F. Supp. 199, 200 (S.D. Miss. 1962) ("*Coleman I*") (sufficient purpose to examine federal election records is "to see if any Federal laws were violated").[2]

Well-established principles of statutory construction foreclose federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "[t]he judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925).

"[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. In such cases, legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *United States v. Mo. Pac. R.R. Co.*,

---

[2] Defendants' further allege that the United States' purposes are "pretextual" and that the "actual purpose" is "an investigation of alleged election irregularities more than five years ago […]." Intervenor's Mot. To Dismiss, Doc. 17, at 23; Def.'s Mot. To Dismiss, Doc. 18, at 9. In addition to the purpose being nonreviewable, allowing the Defendants to assert ulterior motives based on Defendants' interpretation of the record before the Court invites improper speculation. *See* Order, *United States v. N.C. St. Board of Elections,* No. 5:25-cv-283 (W.D.N.C., filed Jan. 12, 2026), Attached as Ex. 1, at 7 (Myers, J., finding arguments that the United States is trying to use the CRA to build a national voter database in a suit for voter rolls "speculative and premature"). *But see* Order, *United States v. Shirley Weber*, No. 2:25-cv-9149 (C.D.Calif., filed Jan. 15, 2026) (Carter, J., granting Defendants' Motions to Dismiss).

278 U.S. 269, 278 (1929) (citations omitted). In that manner, the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *Poston*, 266 U.S. at 554. "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process…." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654-55 (2020).

Further, Defendant claims that the documents sought by the United States are not covered by the CRA because they are not related to voter registration. Def. Mot. To Dismiss, Doc. 18, at 9. This too misstates the law. Under the CRA, the Attorney General is entitled to records and papers relating to any application, registration, payment of poll tax, or other act requisite to voting in an election. By the CRA's plain text, ballots, absentee ballot envelopes, and other related voting records are "requisite" to the act of voting in an election. Defendants can cite no authority to the contrary. All District Courts known by the United States to have addressed the issue have either found or assumed that the CRA "encompasses, among other things, voting registration records, poll lists, applications for absentee ballots, ballot envelopes, tally sheets, computer programs used to tabulate votes, as well as the ballots themselves […]." *McIntyre v. Morgan*, 624 F. Supp. 658, 664

(S.D. Ind. 1985) (finding plaintiff's request for federal election record preservation an adequately protected right based on the CRA); *see* Order, *United States v. State of Alabama,* No. 2:08-cv-920 (M.D. Ala., filed March 27, 2009), attached as Ex. 2 (entering order for production of ballot affidavit envelopes pursuant to CRA demands in the context of enforcement of the Uniformed and Overseas Citizens Absentee Voting Act).

While it is true that the records demanded are older than twenty-two months, this presents no barrier to the Attorney General obtaining such records, so long as they are still within the custody and control of the Defendant. The CRA, by its plain language, imposes a duty on a custodian to preserve records for twenty-two months. The duty to produce has no expiration. Here, there is no dispute that the demanded records are within her possession. Def. Mot. To Dismiss, Doc. 18, at 11. As such, they must be produced pursuant to the demand of the Attorney General.

**STATES CANNOT FRUSTRATE THE ATTORNEY GENERAL'S INVESTIGATIVE POWERS BY SEALING ELECTION RECORDS**

The CRA sets the procedure for the production of election records from a custodian. The Attorney General must 1) make a demand to the custodian of the records in writing and 2) state the basis and purpose of such demand. If both requirements are satisfied, and the custodian refuses to produce the records, the CRA grants the Attorney General the authority to summarily enforce the demand. To the

extent that any state laws or state court procedures are in conflict with the sweeping obligations of a custodian to produce federal election records, they are preempted.

While the United States Constitution invests states with broad powers over the conduct of federal elections, it also explicitly authorizes Congress to override those state choices. The Elections Clause provides, "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1. The Supreme Court has explained that the Elections "Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to preempt state legislative choices… Thus, it is well settled that the Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster v. Love*, 522 U.S. 67, 69 (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-33 (1995)). "'[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative.'" *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)); *see also Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 7-9 & n.1 (2013) (discussing the breadth of the Elections Clause).

The Attorney General made a written demand for covered records which stated the basis and purpose of the demand. The records are in the custody and control of the Defendant, and the Defendant has refused to produce the records. The Attorney General has therefore complied with all statutory requirements, for the demand, and the Defendant "shall" produce them or be compelled to do so. 52 U.S.C. § 20705.

## CONCLUSION

In light of the foregoing, the Court should deny the Defendants' Motions and Order Defendant Alexander to produce the demanded records per the CRA

DATED: January 20, 2026.   HARMEET K. DHILLON
Assistant Attorney General

ERIC V. NEFF
Acting Chief, Voting Section

/s/ Christopher J. Gardner
CHRISTOPHER J. GARDNER   GA No. 163932
BRITTANY E. BENNETT   GA No. 717377
Trial Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Christopher.Gardner@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

I hereby certify that this brief uses Times New Roman size 14 font in compliance with LR 5.1(B).

/s/ Christopher J. Gardner
CHRISTOPHER J. GARDNER
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Christopher.Gardner@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Christopher J. Gardner
CHRISTOPHER J. GARDNER
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Christopher.Gardner@usdoj.gov